Alvin Hill and Lula Hill v. Commissioner.
Hill v. Commissioner
Docket No. 90565.
United States Tax Court
T.C. Memo 1962-239; 1962 Tax Ct. Memo LEXIS 70; 21 T.C.M. (CCH) 1273; T.C.M. (RIA) 62239; October 9, 1962
*70 Held, that petitioners did not constructively receive a dividend in 1957 from a corporation of which they were the sole stockholders. They received this dividend in 1958 and properly returned it for taxation on their joint income tax return for that year. Wentworth T. Durant, Esq., Leslie C. Hackler, Jr., Esq., and George S. Atkinson, Jr., Esq., Dallas Federal Savings Bldg., Dallas, Tex., for the petitioners. J. C. Linge, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioners' income tax for the year 1957 in the amount of $7,700.17. The deficiency is due to the following adjustment made by the Commissioner in his deficiency notice: Taxable income as shown on joint
return
$41,777.75
Additional Income: (a) Dividends
14,010.00
Taxable income as adjusted
$55,787.75
Explanation of Adjustment (a) It is determined that dividends in the amount of $14,000.00 paid by Hill Lines, Inc., were constructively received by you in 1957 and your income has been increased in that amount. Dividends reported on your return were also understated in the amount of $10.00; therefore, *71 your income has been increased a total of $14,010.00. Petitioners assign error as to the foregoing adjustment as follows: (a) In including in taxable income of petitioners for 1957 dividends which respondent claims were constructively received by petitioners in 1957, but which were not received by petitioners or available to petitioners until the year 1958, for which year they were included in their taxable income. Findings of Fact Some of the facts were stipulated and the stipulation of facts, together with exhibits attached thereto, is incorporated herein by this reference. The petitioners, who are husband and wife, resided in Amarillo, Texas, during the years in question. They filed joint income tax returns for the taxable years 1957 and 1958 with the district director of internal revenue at Dallas, Texas. They reported their income for the years 1957 and 1958 on the cash basis of accounting. Hill Lines, Inc., hereinafter referred to as Hill Lines, was at all times relevant to this case a corporation organized and existing under the laws of the State of Texas with its principal place of business at Amarillo. During the years 1957 and 1958 Hill Lines was engaged in the *72 business of interstate trucking as a common carrier of freight. It was licensed under authority of the Interstate Commerce Commission. During the years 1957 and 1958, petitioners owned all of the authorized and issued stock of Hill Lines except for qualifying shares issued to and held by nominees for the petitioners. As of December 31, 1957, Hill Lines had on hand or on deposit cash in the amount of $287,577.88 and earned surplus in the amount of $1,050,028.64. On December 30, 1957, the board of directors of Hill Lines authorized the payment of a dividend. The minutes showing the declaration of this dividend were recorded in the minute book as follows: Meeting held in the General Offices of the Company December 30, 1957 at 2:00 PM. Motion made and carried unanimously that a dividend of $14,000.00 be declared and to be paid as of December 31, 1957, and that the appropriate dividend checks be mailed or handed to stockholders not later than January 1, 1958. The dividends were actually paid on January 10, 1958, when four checks were issued to Alvin Hill, Lula Hill, Denard Gordon, and Robert Bennett. The checks issued to Gordon and Bennett were endorsed and given to Alvin since *73 Gordon and Bennett held Hill Lines capital stock in their names only as nominees for Alvin and Lula. Petitioners reported the receipt of dividends paid by Hill Lines in the amount of $14,000 in their joint income tax return filed for the year 1958. At no time during the examination of petitioners by the revenue agent did petitioners state or indicate they thought the minutes of the meeting held on December 30, 1957, were incorrect. After the examination of petitioners' 1957 return they were granted an informal conference that was held in Amarillo. Alvin, his representative G. Edwin Smith, informal conferee George Leusing, and agent Ben Friend attended that conference. Petitioners did not at any time during that conference state or indicate that they thought the minutes of the board meeting held on December 30, 1957, were incorrect. Petitioners were granted conferences by the appellate division for the purpose of considering the question of whether petitioners constructively received dividends from Hill Lines in the amount of $14,000 during the year 1957. Those meetings were held in Dallas, Texas, on September 9, 1960, and December 1, 1960. Petitioners did not at any time during *74 these two conferences state or indicate in any manner that they thought the minutes covering the meeting of the board held on December 30, 1957, were incorrect. They did, however, contend that petitioners did not constructively receive the $14,000 dividends in 1957. In a protest signed under oath by petitioner Alvin dated March 31, 1960, addressed to the conference coordinator, Internal Revenue Service, Dallas, Texas, the petitioners stated in part as follows: It is our position that this dividend was not received until January 10, 1958, at which time check was issued by the company in accordance with resolution passed by the board of directors on December 30, 1957. The company, under this resolution, had a right to pay this not later than January 1. Just why it was not made on January 1 we are not in a position to state, except that on or about the first of the year the bookkeeping staff was extremely busy closing the books and did not get around to writing this check until January 10 which was satisfactory to the stockholders. In a protest signed under oath by both petitioners dated July 19, 1960, and addressed to the district director, Internal Revenue Service, Dallas, Texas, *75 petitioners stated in part as follows: FACTS RELIED UPON: The dividend of $14,000.00 was declared on December 30, 1957, and was to be paid not later than January 1, 1958. Company paid this dividend on January 10, 1958, and it was deposited in taxpayer's account on January 13, 1958. It is taxpayer's contention that it was not unqualifiedly available to the taxpayer in 1957 for the reason that the company could, under the resolution, pay this dividend on January 1, 1958. The company set this dividend payable up on its books as dividends payable, and it appeared on their financial statement in that manner as of December 31. It is our position that we have handled the dividends correctly in reporting them in the year 1958 and not in 1957. Neither petitioners nor their representatives contended or claimed at any time prior to February 1962 that the minutes covering the meeting on December 30, 1957, of the board of directors of Hill Lines were incorrect in any manner whatever. Alvin was president of and actively supervised the operations of Hill Lines during the year 1957. Gordon, secretary of Hill Lines, typed the minutes of the board of directors' meeting held on December 30, 1957. At *76 the time he typed the minutes he believed that the minutes as typed correctly reflected the resolution, declaring and authorizing the payment of dividends, passed by the board of directors on December 30, 1957; he intended that the minutes should be correct. Opinion BLACK, Judge: The only issue that we have to decide in this proceeding is whether or not petitioners constructively received in 1957 dividends of $14,000 from Hill Lines. It is stipulated that petitioners received such dividends on January 10, 1958, and returned them for taxation in 1958 and paid taxes thereon. Respondent, however, has determined that petitioners constructively received the dividends in question in 1957 and should have returned them for taxation in that year and not in 1958. Petitioners in their assignment of error have assailed the correctness of this determination by respondent. There is no issue but that Hill Lines had ample cash resources in 1957 with which to pay the dividends. In their brief, petitioners say: On December 30, 1957, the Board of Directors of Hill Lines, Inc. met and declared a dividend. The written minutes of that meeting stated that the dividend was payable by the corporation *77 not later than January 1, 1958. On January 10, 1958, the dividend checks were drawn, signed by two employees of the corporation, and delivered to Petitioners as shareholders. Petitioners were on the cash basis of acounting. Based upon the foregoing facts, the following question is presented: DID PETITIONERS CONSTRUCTIVELY RECEIVE THE DIVIDENDS PAID TO THEM ON JANUARY 10, 1958, DURING THE YEAR 1957, BY REASON OF THE DRAFTED MINUTES WHICH REQUIRED PAYMENT NOT LATER THAN JANUARY 1, 1958? Petitioners' second contention as stated in their brief is as follows: On December 30, 1957, the Board of Directors of Hill Lines, Inc. met and declared a dividend which they intended to be payable not before January 1, 1958. Inadvertently, the written minutes for the meeting stated that the dividend was to be paid in hand or by mail not later than January 1, 1958. The dividend was actually paid on January 10, 1958. Based upon the foregoing facts, the following question is presented: DO THE WRITTEN MINUTES CONTROL THE STOCKHOLDER'S RIGHT TO RECEIVE DIVIDENDS OR DOES THE ACTION OF THE DIRECTORS PREVAIL? We shall take up and decide petitioners' first contention as stated in their brief. *78 It is stipulated that the minutes of the corporation read as follows: Meeting held in the General Offices of the Company December 30, 1957 at 2:00 PM. Motion made and carried unanimously that a dividend of $14,000.00 be declared and to be paid as of December 31, 1957, and that the appropriate dividend checks be mailed or handed to stockholders not later than January 1, 1958. As we construe this resolution, the corporation was to write out the dividend checks on December 31, 1957, but was to have until January 1, 1958, in which either to hand them to the stockholders or mail such checks to them. As a matter of fact, the stipulation shows that the checks were written on January 10, 1958, and handed to the stockholders on that date. It is conceded that petitioners included the $14,000 dividends in their income tax return for 1958. We think that was the year in which petitioners, being on the cash basis, should have returned them for taxation. As stated by petitioners, the issue is: "Did petitioners constructively receive the dividends paid to them on January 10, 1958, during the year 1957, by reason of the drafted minutes which required payment not later than January 1, 1958? *79 " We have had many cases before us involving the question as to whether a dividend was constructively received in a year prior to the year in which the stockholder actually received it and returned it as taxable income. Some of these decisions have been in favor of the taxpayer and some have been against the taxpayer, depending upon the facts of the particular case. In , the Supreme Court said: The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not. * * * Of course that is now settled law. Were the dividends here in question subject to petitioners' unfettered command in 1957 and were they free to enjoy them at their option in that year? As we construe the dividend resolution which was adopted by the board of directors of the corporation on December 30, 1957, the corporation was authorized to write the dividend checks on December 31, 1957, but the resolution granted the corporation until January 1, 1958, in which *80 to either hand the checks to the stockholders or mail the checks to them. Under these circumstances we do not think it can be said that petitioners had unfettered command over the dividend checks in 1957. If they had stepped into the office of the corporation on December 31, 1957, and demanded delivery of the dividend checks on that date, the corporation could have said to them: "The corporate resolution permits us to hand these checks to you or mail them to you not later than January 1, 1958, and the corporation does not choose to hand them to you or mail them to you prior to January 1, 1958." What could the stockholders have done about it in such a situation? Nothing, so far as we can see. The reason they could not have done anything about it was because the corporate resolution granted to Hill Lines permission to wait until January 1, 1958, before handing or mailing to the stockholders the dividend checks. Respondent argues that because the petitioners were the sole stockholders of the corporation they could have ordered it to do anything they wanted done and, therefore, the corporate resolution stating "not later than January 1, 1958" meant no restraint at all. It is stipulated: *81 2. Hill Lines, Inc., was at all times herein concerned a corporation organized and existing under the laws of the State of Texas, with its principal place of business in Amarillo, Texas. This being true, it requires no citation of authority that the corporation was an entirely separate legal entity from its stockholders. In the recent case of , at p. 117, we said: Respondent's argument that as majority shareholder, petitioner was not bound by the contract and could have taken any income of the company is untenable. The argument that the principle of constructive receipt comes into action with the mere possession of the power (as opposed to the right) to receive funds extends the principle to unwarranted limits and has been rejected by the courts on numerous occasions. [Citing cases.] Can it be said that under the dividend resolution as recorded in the minutes the petitioners had unfettered command over the dividend proceeds on December 31, 1957, notwithstanding the checks were not written by the corporation until January 10, 1958, and delivered to them on that date? We think not. We think the facts of the instant case bring *82 it within the purview of . In that case the Supreme Court, in deciding for the taxpayer, among other things said: The checks did not constitute payments prior to their actual receipt. The mere promise or obligation of the corporation to pay on a given date [in the instant case on December 31, 1957] was not enough to subject to petitioner's unqualified demand "cash or other property"; and none of the parties understood that it was. We decide the issue in favor of petitioners. Having decided petitioners' contention No. 1, it becomes unnecessary to decide or discuss petitioners' contention No. 2. In his determination of the deficiency respondent determined that petitioners received a dividend of $10, having no relation to the $14,000 dividend here in question, which they omitted from their return for 1957. * Petitioners do not dispute that this $10 was erroneously omitted from their 1957 * return and they concede that the Commissioner is correct in this part of his determination. Therefore, *83 Decision will be entered under Rule 50. Footnotes
*. The date "1958" was deleted and the date "1957" added by an official order of the Tax Court dated October 18, 1962, and signed by Judge Black.↩